UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ARANTZA ESPINOZA,                                    CASE NO.: 1:19-cv-20966-KMW

    Plaintiff,

vs.

ULTRA ENTERPRISES INC.
DBA Ultra Music Festival.,
a Florida for-profit corporation,

    Defendant.
_____/

**AMENDED COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND**

Plaintiff, ARANTZA ESPINOZA, through undersigned counsel, sues Defendant, ULTRA ENTERPRISES INC., Inc., a Florida for-profit corporation (hereinafter referred to as "Ultra"), for declaratory and injunctive relief, and damages, and alleges as follows:

1)   This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2)   This action is also brought pursuant to 28 C.F.R. Part 36.

3)   This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4)   Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5)   Plaintiff is sui juris, and she is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, Ultra is a Florida for-profit corporation authorized to do business and doing business in the State of Florida.

7) Defendant, Ultra is company that organizes and produces an annual music festival in Miami-Dade County and brick and mortar store within and during the festival and owns and operates www.ultramusicfestival.com and www.ultramerchandise.com.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet websites to purchase music festival tickets through www.ultramusicfestival.com, and merchandise through www.ultramerchandise.com.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer. The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant times, Plaintiff is and was visually impaired and has Leber Congenital Amaurosis since birth that substantially impairs Plaintiff's vision.

16) Plaintiff's visual impairment interferes with her day-to-day activities and causes limitations in visualizing their environment. As such, Plaintiff is a member of a protected class under the

ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but she needs the assistance of special software for visually impaired persons. The software that she uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates a music festival that also sells merchandise and retail items through a brick and mortar retail store at the festival and on its websites. The music festival and retail store within the festival are open to the public, and each of Defendant's location is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's websites are places of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar store. The public is able to, among other things, locate the Defendant's retail store, view the products available at defendant's location, purchase tickets clothing and other retail items through defendant's websites, sign up for a Defendant's newsletter, create an account and register to track orders, purchase gift cards, and learn the story behind Defendant's brand.

20) Since the Defendant's websites are public accommodations, it must comply with the requirements of the ADA. The websites cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing tickets and clothing through Defendant's websites and at Defendant's store and visiting Defendant's brick and mortar location.

22) Plaintiff is not able to visit the physical location without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's websites for delivery to her home is important to her as an alternative when she is not able to visit the Defendant's store.

23) The Websites also services Defendant's physical store by providing information on its brand, sales campaigns, and events, and other information that Defendant is interested in communicating to its customers about its physical location.

24) Since the websites allow the public the ability to locate the Defendant's retail store, view the products available at defendant's location, purchase clothing, tickets and other retail items, sign up for a Defendant's newsletter, create and account and register to track orders, the websites are an extension of, and gateway to, Defendant's physical store. By this nexus, the websites are characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar store.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical store, sign up for a Defendant's newsletter, create and account and register to track orders, purchase gift cards, and learn the story behind Defendant's brand, the Websites are an extension of and gateway to the physical store, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). As such, the Websites, as an intangible service, privilege and advantage of Defendant's brick and mortar location, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical location.

26) At all times material hereto, Defendant was and still is an organization owning and operating both websites. Since the websites are open through the internet to the public as an extension of the retail store, by this nexus the websites are an intangible service, privilege and advantage of Defendant's brick and mortar location, and Defendant has subjected itself and the associated websites are created and maintains to the requirements of the ADA.

27) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical store, and purchase Defendant's merchandise, sign up for Defendant's newsletter and account through the Websites and at Defendant's physical store.

28) The opportunity to shop Defendant's merchandise from her home is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices. Plaintiff may look at several dozens of sites to compare features and prices.

30) During the month of March 2019, Plaintiff attempted on several occasions to utilize the ultramusicfesitval.com website to browse through the tickets and the ultramerchandise.com website to educate herself as to the merchandise and with the intent to make a purchase through the websites or at one of Defendant's physical store.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are

providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase clothing on Defendant's website. Plaintiff first entered the main website (www.ultramusicfestival.com) and attempted to purchase merchandise through the "Merch" link which opens the Defendant's secondary website (www.ultramerchandise.com). However, the Plaintiff was not able to freely and fully use either of Defendant's websites because they contain access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's websites that include, but are not limited to viewing the products available at defendant's location, purchasing clothing, tickets through defendant's websites, signing up for a Defendant's newsletter, creating an account to register and track orders, purchasing gift cards, and learning the story behind Defendant's brand.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's websites and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's websites do in fact fail the following WCAG 2.0-AA Compliance standards and it do not provide sufficient alternatives to serve the equivalent purpose:

**Errors that prevent user to complete desired action**
- For certain required user interface components, the name and role can be programmatically determined; and notification of changes to these items are not available to assistive technologies; *Standard 4.1.2*
- Certain keyboard operable user interface has a mode of operation where the keyboard focus indicator is not visible; *Standard 2.4.7.*
- Required Input Fields are not labeled for screen readers due to improper configuration; *Standard 3.3.2*
- Required Input Fields are not labeled as required for screen readers due to improper configuration; *Standard 3.3.2*

**Errors that make it difficult to navigate through the website**

- Missing some mechanisms to bypass blocks of content that are repeated on multiple web pages; *Standard 2.4.1*
- Scrolling information starts automatically, lasts more than five seconds, and is presented in parallel with other content, but there is no a mechanism for the user to pause, stop, or hide it; Standard 2.2.2

- Certain visual presentation of text has a contrast ratio less than 4.5:1; *Standard 1.4.3*

38) Furthermore, Defendant's websites do not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who she can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the websites, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its websites which prevent individuals with disabilities who are visually impaired from

comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is her only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its websites.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent her in this case, and has agreed to pay them a reasonable fee for their services.

## **COUNT I – VIOLATION OF THE ADA**

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the websites https://www.ultramusicfestival.com and www.ultramerchandise.com, which are public accommodations subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's websites are inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its websites, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's websites are not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's websites revealed that the websites are not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's websites, including:

**Errors that prevent user to complete desired action**
- For certain required user interface components, the name and role can be programmatically determined; and notification of changes to these items are not available to assistive technologies; *Standard 4.1.2*
- Certain keyboard operable user interface has a mode of operation where the keyboard focus indicator is not visible; *Standard 2.4.7.*

- Required Input Fields are not labeled for screen readers due to improper configuration; *Standard 3.3.2*
- Required Input Fields are not labeled as required for screen readers due to improper configuration; *Standard 3.3.2*

**Errors that make it difficult to navigate through the website**

- Missing some mechanisms to bypass blocks of content that are repeated on multiple web pages; *Standard 2.4.1*
- Scrolling information starts automatically, lasts more than five seconds, and is presented in parallel with other content, but there is no a mechanism for the user to pause, stop, or hide it; Standard 2.2.2

- Certain visual presentation of text has a contrast ratio less than 4.5:1; *Standard 1.4.3*

51) Due to Defendant's failure to provide ADA compliant websites, the Plaintiff has been injured since she has been denied full access to Defendant's websites.

52) As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in her favor and against Defendant for the following relief:

    A.    A declaration that Defendant's website is in violation of the ADA;

B.      An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C.      An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations. Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D.      An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.      An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.      An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G.      An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H.      An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.      An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.      An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.      An award to Plaintiff of her reasonable attorney's fees, costs and expenses; and

Such other and further relief as the Court deems just and equitable.

---

[1] 

## COUNT II – TRESPASS

53) Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54) Both of Defendant's websites (www.ultramusicfestival.com and www.ultramerchandise.com) contain software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55) Plaintiff never consented to and was unaware that Defendant's websites were placing software on her computer.

56) Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on her personal computer, which was done without her knowledge and consent.

57) Defendant's trespass has damaged Plaintiff by affecting the condition and value of her computer.

58) On its websites, Defendant has an internet privacy policy section that can only be accessed by clicking a barely visible section at the bottom right of the page called "Legal Notice", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its websites that collect a website user's preferences and internet browsing habits as follows:

> *Privacy Statement*
>
> *Copyright © 2012 Kool by Design. All Rights Reserved. Ultra Music Festival, Ultra and the U design is a registered*
> *trademark (Reg. No. 2,892,744) and are protected by U.S. and international copyright laws, trademark laws, and*

*treaties. Any content, including but not limited to merchandise, designs, graphics, logos, and branding are*
*protected by U.S. and international copyright laws, trademark laws and treaties. Any use in any manner without*
*the prior written consent is strictly prohibited. All Rights Reserved.*

*Terms and Conditions*

*1. General.*

*By entering this [http://www.ultramerchandise.com](http://www.ultramerchandise.com) site (the "Website") you attest that these Terms and Conditions have been executed and delivered by you and constitute a valid and binding*
*agreement between you and Kool by Design ("KBD"), and shall be deemed enforceable against you in accordance*
*with the following terms, (the "Terms"). You represent that you are (1) at least 18 years of age, (2) of legal age to*
*enter into a binding agreement, and (3) not a person barred from receiving services under the laws of the United*
*States or other applicable jurisdiction.*
*2. Site Use.*

*Use of the Website confirms your express consent to follow and to be bound by these Terms. If you do not accept these Terms, do not use this Website. Should KBD deem any use of this Website to be*
*a violation of these Terms in its absolute discretion, KBD reserves the right to seek all remedies available by law*
*and in equity and to terminate your access or use of this Website at any time, for any reason or for no reason and*
*without prior notice to you. KBD may at any time, and from time to time, revise these Terms by updating this*
*posting. It is your obligation to visit this page from time to time to review current Terms. Your use of this Website*
*following any such revisions confirms your express consent to follow and to be bound by the terms and conditions*
*as revised.*

*3. Ownership of Content.*

*The design of this Website and all of its materials, including, but not*
*limited to, its software or HTML code, scripts, text, artwork, logos, photographs, images, designs, video, audio,*
*written and other materials that appear as part of this Website (collectively "Content") are protected by U.S. and*
*international copyright laws, trademark laws and other treaties. All Content hereunder is*

*provided by KBD under a*
*limited license as a service to its current and prospective customers and may be used only for the personal, non^*
*commercial, purchase of KBD merchandise. Any purchase made for the perceived re^sale of KBD merchandise of*
*the materials embedded herein shall be deemed a "Commercial Use." KBD shall immediately terminate any*
*suspected Commercial Uses and shall prosecute such violation of these Terms to the fullest extent of the law or in*
*equity. You agree to the following: (a) you may not copy, reproduce, publish, transmit, distribute, perform, display,*
*post, modify, create derivative works from, sell, license, sublicense or otherwise exploit this Website, any of its*
*Contents, or any related software or merchandise; (b) you may not access or use the Website for any competitive*
*or Commercial Use; and (c) you will not permit any copying of the Content. Any unauthorized copying or*
*Commercial Use, alteration, distribution, transmission, performance, display, or other use of the Content is strictly*
*prohibited.*

*4. Merchandise.*

*KBD makes no representation as to the completeness, accuracy, or currency of*
*any information on this Website. KBD reserves the right to make changes in information regarding price,*
*description, or availability without notice; to limit the order quantity of any product and/or to refuse service to any*
*customer. KBD has made considerable effort to accurately display the various color options of its products that*
*appear on the Website; however, the actual color you will see will depend on your computer, and KBD cannot*
*guarantee that your computer will accurately display the merchandise. If a product is out of stock or is no longer*
*in production, KBD reserves the right to cancel a purchase order.*

*5. Collection of Personal Information.*

*KBD reserves the right to collect and to store the following*
*personal information (the "Account Information") upon registration and the creation of an account with the KBD*
*Website:*

*a. Email addresses, phone numbers, physical contact information including but not limited to shipping and billing addresses*

*b. Transactional information based upon your activities on the Website (such as purchase history and content generated by the user or that relates to the user's account);*

*6. Account.*

*You are responsible for maintaining the confidentiality of your Account Information and for controlling access to your account and your computer. You agree to accept responsibility for all activities that occur under your account. KBD reserves the right to terminate your account at any time, for any reason or for no reason and without prior notice to you.*

*7. Entire Agreement.*

*These Terms constitute the entire agreement between you and KBD regarding the specific matters herein, and all prior agreements, letters, proposals, discussions and other documents regarding the matters herein are superseded and merged into these Terms.*

*8. Severability.*

*If any term or provision of these Terms is found by a court of competent jurisdiction to be invalid, illegal or otherwise unenforceable, the same shall not affect the other Terms or provisions hereof or the whole of these Terms. Such unenforceable Terms or provisions shall be deemed modified to the extent necessary in the court's opinion to render such term or provision enforceable and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent the intent of the parties herein set forth.*

*9. Modification.*

*KBD, its successors, assigns, designees or nominees, shall have the sole and exclusive right at its discretion to make or have made revisions, modifications, alterations, amendments, corrections, updates, expansions, condensations, transformations, transpositions, arrangements, sound recordings, scores, additions to, deletions from or other changes to or derivative works based on these Terms or any portion thereof in any way KBD may see fit or deem necessary.*

*10. Limitation of Liability.*

*IN NO EVENT SHALL KBD BE LIABLE TO ANY PARTY FOR ANY DIRECT,
INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES
OF ANY KIND OR NATURE
WHATSOEVER, WHETHER ARISING UNDER CONTRACT OR TORT OR ANY OTHER
THEORY OF LIABILITY EVEN IF THE
POSSIBILITY OF SUCH DAMAGES WERE DISCLOSED OR COULD HAVE BEEN
REASONABLY FORESEEN,( FOR USE OF
THIS SITE OR ANY OTHER LINKED WEBSITE, INCLUDING, WITHOUT
LIMITATION, LOST PROFITS OR REVENUES,
COSTS OF REPLACEMENT, BUSINESS INTERRUPTIONS, LOSS OF DATA OR
DAMAGES RESULTING FROM USE OF OR
RELIANCE ON THE INFORMATION PRESENT, EVEN IF KBD IS EXPRESSLY
ADVISED ABOUT THE POSSIBILITY OF SUCH
DAMAGES.*

*11. Jurisdiction.*

*No implication is made that the materials published on this Website are
appropriate for use outside of the United States. If you access this Website from outside
of the United States, you
do so on your own initiative and you are responsible for compliance with domestic and
local laws. These Terms are
governed by and construed in accordance with the laws of the State of Florida
notwithstanding conflict of law
principles. Venue for any legal action arising out of these Terms shall be in the courts of
Miami-Dade County.*

59) Due to Plaintiff's disability, she could not understand Defendant's website and she could not give informed consent to Defendant's installation of data and information tracking software on her computer. Defendant also could not give informed consent to Defendant's collection of her browsing history and the placement of analytics on her computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from her computer and determine which programs should be installed and operated on her computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

### Request for Jury Trial

61) Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  305-824-9800
Facsimile:  305-824-3868
Email:  lr1208@live.com
By:          /s/
LYDIA C. QUESADA, ESQ., of Counsel
FL BAR NO.: 191647